**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF VIRGINIA**
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| TILLMAN INFRASTUCTURE LLC, | Case No. 3:21-cv-40 |
| *Plaintiff,* | |
| v. | MEMORANDUM OPINION |
| THE BOARD OF SUPERVISORS OF CULPEPER COUNTY, VIRGINIA, *et al.,* | Judge Norman K. Moon |
| *Defendants.* | |

## I.  Background

This matter comes before the Court on Culpeper County, Virginia, and the Board of Supervisors of Culpeper County's (Defendants') motion to dismiss, Dkt. 6.

Plaintiff Tillman Infrastructure LLC is a telecommunications company that invests in and manages cell towers and other telecommunications infrastructure. Dkt. 25 (Amended Complaint) at ¶ 2.[1] One of its clients is AT&T. *Id.* In March 2021, Tillman and AT&T submitted a use permit application to Culpeper County proposing to construct a new telecommunications tower in Rapidan, VA. *Id.* at ¶ 14. The application noted that "the proposed site will allow wireless carriers to improve the quality of services for their customers in Culpeper County and the City of Rapidan." *Id.* Specifically, the application sought to build a tower "designed to accommodate up the four (4) carriers" and that would "be designed as a 195 ft. self-support structure" with an additional 4 ft. lightning rod. *Id.*; *see also* Ex. 1 to Dkt. 25 (the application).

Pursuant to the application requirements, Tillman noted that the area was currently served

---

[1] The facts alleged in the Amended Complaint are taken as true for the purposes of the motion to dismiss. *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

by a tower operated by SBA Towers, which was then "deemed by the anchor carrier, AT&T, as unsuitable due to fees, costs and contractual provisions." *Id.* at ¶ 17. In addition, the application noted that "[t]he current rent charged by SBA to co-locate on the SBA tower is over two times what Tillman will charge AT&T to co-locate on the Tillman tower." *Id.* at ¶ 19. Tillman contended that SBA was "using its monopoly to extract unreasonable compensation from AT&T." *Id.* at ¶ 21. The application also contended that AT&T would have an easier time developing upgrades to Tillman's tower as opposed to SBA's, which "requires AT&T to apply to SBA every time it seeks to improve wireless facilities." *Id.* at ¶ 24.

The County hired a private contractor, CTA Consultants, to provide a technical review of Tillman's use permit application. *Id.* at ¶ 26. CTA Consultants determined that Tillman's use permit application complied with "the County's application process, tower ordinances, and other applicable codes for telecommunications support structures." *Id.* at ¶ 27; *see also* Ex. 2 to Dkt. 25 (the CTA report). Tillman's application was also reviewed by the County's Planning & Zoning Department staff which resulted in a recommendation "that the Planning Commission find[] the proposal by the applicant Tillman Infrastructure to build a 199 foot telecommunications tower facility on Tax Map/Parcel 60/19, to be substantially in accord with the provisions of the adopted Comprehensive Plan goals as mentioned specifically in chapter 7." *Id.* at ¶ 28.

At the conclusion of a public hearing on the matter, the Planning Commission determined that Tillman's application was (1) in substantial accord with the County's Comprehensive Plan and (2) in conformance in Article 17, 17-6 of the Zoning Ordinance, and (3) recommended by a vote of nine to zero that the Board of Supervisors approve the proposed use permit with the conditions recommended by CTA Consultants. *Id.* at ¶ 30; *see also* Ex. 4 to Dkt. 25 (letter from

Planning Commission Chair to the County Board of Supervisors); Ex. 5 to Dkt. 25 (transcript from Planning Commission Hearing).

The County Board of Supervisors considered Tillman's application at a public hearing on July 6, 2021. *Id.* at ¶ 31. The only speaker in opposition was SBA. *Id.* One of the supervisors noted that "the issue here is not a communications issue. The issue here is not a cell phone issue. It's nothing to do with the things that we're really looking for here. What the issue is here, it's a financial issue is what it is." *Id.* Another supervisor suggested that AT&T continue to try to negotiate its rates with SBA. *Id.*

The Board of Supervisors then took the matter under advisement until another public hearing on October 5, 2021. *Id.* at ¶ 33. Tillman's representative advised the Board that SBA and AT&T had been unable to negotiate an acceptable rental rate and provided the Board with a letter from AT&T chronicling AT&T's efforts to negotiate with SBA. *Id.* For what Tillman alleges are unclear reasons, the Board voted unanimously to deny the application. *Id.* at ¶ 37.

Tillman filed the original Complaint in this case, Dkt. 1, in November 2021 and Defendants' motion to dismiss, Dkt. 6, followed. In May 2022, Tillman filed the Amended Complaint, Dkt. 25, dropping one count and from the original Complaint. The parties stipulated to having the prior motion to dismiss, Dkt. 6, apply to the Amended Complaint. Dkt. 22, 23.

The five-count Amended Complaint alleges violations of the Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7) and Virginia statutes relating to wireless communications infrastructure, Va. Code §§ 15.2-2316.3–2316.5. Dkt. 25 at ¶¶ 38–74.

Defendants' motion to dismiss attacks each of the Amended Complaint's five counts. *See* Dkt. 6.

## II.  Legal Standard

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. The complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), with all its allegations taken as true and all reasonable inferences drawn in the plaintiff's favor, *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). A motion to dismiss "does not, however, resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Id.* at 214.

Although the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. A court need not "accept the legal conclusions drawn from the facts" or "accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Simmons v. United Mortg. & Loan Inv.*, *LLC*, 634 F.3d 754, 768 (4th Cir. 2011) (quotation marks omitted). This is not to say Rule 12(b)(6) requires "heightened fact pleading of specifics," instead the plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570; *see Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("only a complaint that states a plausible claim for relief survives a motion to dismiss").

## III.  Discussion

### A.  Count One: Violation of 47 U.S.C. § 332(c)(7)(B)(iii)

In Count One, Tillman alleges that "the Board's denial of Tillman's application for a conditional use permit violates the Telecommunications Act of 1996 because it [was] not supported by substantial evidence in a written record." Dkt. 1 at ¶ 39; *see* 47 U.S.C.

4

§ 332(c)(7)(B)(iii). Ordinarily, courts apply the substantial evidence standard at summary judgment, not at the motion to dismiss stage. *See, e.g.*, *T-Mobile NE. LLC v. City Council of Newport News*, 674 F.3d 380, 384 (4th Cir. 2012); *Pueschel v. Peters*, 577 F.3d 558, 563 (4th Cir. 2009). Defendants appear to want the Court to apply the substantial evidence standard here on the motion to dismiss (*see* Dkt. 7 at 7–9) but have not offered any cases in which a court has performed the substantial evidence analysis at the motion to dismiss stage, and the Court cannot find any.

Tillman, on the other hand, states that the standard for the Court to apply to Count I at the motion to dismiss stage is whether "the Complaint alleges facts sufficient to establish that the County's denial was not based on substantial evidence," (Dkt. 12 at 3), although Tillman has also not provided any cases where a court has considered a claim under 47 U.S.C. § 332(c)(7)(B)(iii) at the motion to dismiss stage.

In line with the usual trend of courts applying the substantial evidence standard at summary judgment, not on a motion to dismiss, the Court will reserve the ultimate question of whether the County's decision was supported by substantial evidence for summary judgment. Instead, keeping in mind the standard for a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court will look to whether Tillman has stated sufficient facts to make out a plausible claim of relief under 47 U.S.C. § 332(c)(7)(B)(iii), with all factual allegations taken as true and all reasonable inferences drawn in Tillman's favor. *See Twombly*, 550 U.S. at 570; *King*, 825 F.3d at 212.

The Court holds that Tillman has stated sufficient facts to make out a plausible claim under Count One. The Amended Complaint alleges these pertinent facts, among others: that the Planning Commission determined that the proposed tower was in accord with the County's

Comprehensive Plan (Dkt. 25 at ¶ 28–29); that, while the Board was charged with considering

the reasonableness of rates in determining whether to grant Tillman's application, the Board's

ultimate decision was to not get involved in the negotiations between AT&T and SBA (*id.* at

¶¶ 31, 36, 44); and that only one individual aside from SBA's representative spoke out against

the proposed tower (*id.* at ¶ 29). These facts give rise to a plausible claim that the Board's denial

was not based on substantial evidence. The substantial evidence standard is "necessarily a fact-

intensive inquiry." *T-Mobile Northeast*, 674 F.3d at 388 (discussing how the Fourth Circuit's

cases applying the substantial evidence standard under Section 332(c)(7)(B)(iii) have come out

in different directions based on the particular facts presented). Thus, because Tillman has stated

facts tending to show that the Board's decision was not based on substantial evidence, the Court

finds that Tillman has stated a plausible claim for relief.

Again, the Court emphasizes that the motion for summary judgment stage—not the

present motion to dismiss stage—is the appropriate stage at which to apply the substantial

evidence standard. The Court here holds only that Tillman has stated a plausible claim for relief

under Count One for the purposes of a motion to dismiss.

### B.   Count Two: Violation of Va. Code. § 15.2-2316.4:2(A)(1)

#### 1.   *Whether Tillman Can Bring This Count as the Infrastructure Provider*

In Count Two, Tillman alleges that the Board's denial of the use permit violates Virginia

Code § 15.2-2316.4:2(A), which provides that a locality shall not disapprove an application on

the basis of customer demand for service, quality of its service to or from a particular site, or the

applicant's specific need for the project. Dkt. 1 at ¶ 42.

The statute reads, in relevant part:

A. In its receiving, consideration, and processing of a complete application submitted
under subsection A of § 15.2-2316.4:1 or for any zoning approval required for a standard

process project, a locality shall not:

> 1. Disapprove an application on the basis of:

>> a. The applicant's business decision with respect to its designed service, customer demand for service, or quality of its service to or from a particular site;

>> b. The applicant's specific need for the project, including the applicant's desire to provide additional wireless coverage or capacity; or

>> c. The wireless facility technology selected by the applicant for use at the project[.]

Va. Code § 15.2-2316.4:2(A).

Defendants move to dismiss Count Two because, they argue, Tillman does not provide a "telecommunications service," but is instead "an infrastructure provider" and thus cannot take advantage of a code provision designed to make sure that localities do not deny a wireless facility application on an improper basis. Dkt. 7 at 10. Defendants note:

> To be sure, the Complaint and its exhibits contain references both by Tillman, the Board, and other participants in hearings to AT&T's wanting to build a new tower, but AT&T is not the applicant, and its needs are therefore not relevant for the purposes of Virginia Code Section 15.2-2316.4:2(A)(1).

Dkt. 7 at 11. In response, Tillman argues that "[t]he record reflects that the purpose of the tower was to provide wireless facilities generally, and for AT&T specifically" and that "allowing municipalities to consider improper factors in denying an application simply because it is submitted by the entity constructing the tower for telecommunication services undermines the very purpose of the statute." Dkt. 12 at 9.

Neither party has provided any cases on this issue—whether the infrastructure provider (Tillman, here), rather than the telecommunications service provider (AT&T, here) can bring an action under the statute. Nor can the Court find any. But, based on its reading of the statute, the

Court holds that Tillman, as the infrastructure provider, may bring this action under Va. Code. § 15.2-2316.4:2(A).

First, the Court notes that there is no express language in the statute on whether an infrastructure provider, or only a telecommunications service provider, may bring an action under it. *See* Va. Code. § 15.2-2316.4:2(A). Rather, the statute repeatedly references "the applicant"—which could reasonably refer to either the infrastructure provider or the telecommunications service provider. *Id.* Second, it is undisputed that Tillman is "the applicant" in the sense that Tillman was the party that submitted an application to the Board for a new tower. Third, the fact that some of the reasons that the locality may not consider in disapproving an application contemplate that the telecommunications service provider will be the applicant (e.g., "[t]he applicant's business decision with respect to its designated service, customer demand for service, or quality of its service to or from a particular site") does not foreclose the possibility that the infrastructure provider will be "the applicant." *See id.* And fourth, some of the reasons that the locality may not consider, including most obviously "[t]he wireless facility technology selected by the applicant for use at the project," reference decisions that could be made by the infrastructure provider. *See id.*

Taking those considerations together, the Court holds that Tillman, as the infrastructure provider, may invoke the protections of Va. Code. § 15.2-2316.4:2(A).

*2.  Whether Tillman has "Invite[d] Error" Such that the Claim Should be Dismissed*

Next, Defendants further contend that the Court must dismiss Count Two on the basis that Tillman "invite[d] error," and then sought "to benefit from it." Dkt. 7 at 11. Defendants argue that the Court should invoke the doctrine of judicial estoppel (*see id.*), "an equitable doctrine that prevents a party who has successfully taken a position in one proceeding from

taking the opposite position in a subsequent proceeding." *King v. Herbert J. Mem'l Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998) (internal citations omitted). "Acting on the assumption that there is only one truth about a given set of circumstances, the courts apply judicial estoppel to prevent a party from benefiting itself by maintaining mutually inconsistent positions regarding a particular situation." *Id.* Defendants argue that the Court should invoke judicial estoppel because "in its Application and at the public hearings," Tillman "argued that a new tower would allow it to provide enhanced services," which "opened up the path for the Board to ask reasonable questions" about the services currently being provided, which Tillman now claims the Board was not allowed to consider. (Dkt. 7 at 11).

The Court will not apply judicial estoppel here. For judicial estoppel to apply, Tillman must have (1) "assert[ed] a factual position" in this proceeding that is "incompatible with a position taken in a prior judicial or administrative proceeding," (2) "the prior inconsistent position must have been accepted by the tribunal," and (3) Tillman "must have taken inconsistent positions intentionally for the purpose of gaining unfair advantage." *Herbert J. Mem'l Hosp.*, 159 F.3d at 196. None of those elements are met here, where (1) the alleged basis for estoppel is an argument, not a fact, (2) the Board did not accept Tillman's argument about how its tower would expand cell service, and (3) there is no evidence that Tillman argued before the Board that its tower would expand cell service for the purpose of gaining an unfair advantage, and was, per the Amended Complaint, required to make that argument.

### 3. *Whether There Was "Sufficient Support" for the Board's Decision*

Defendants also argue that the Court should dismiss Count Two because there was "sufficient support" for the Board's decision, referring back to their arguments that there was "substantial evidence" for the Board's denial (*see* Dkt. 7 at 12–13)—arguments that this opinion

has addressed above in Section III.A. For the same reasons discussed there, the Court holds that

the standard here at the motion to dismiss stage is merely whether Tillman has stated a plausible

claim for relief, not whether there was "sufficient support" or "substantial evidence" for the

Board's denial. The Court further holds that Tillman has stated a plausible claim for relief under

Va. Code. § 15.2-2316.4:2(A)(1), because Tillman has alleged facts that, if taken as true, could

make out a claim that the Board considered factors that it was expressly forbidden from

considering under § 15.2-2316.4:2(A). Tillman has alleged that Supervisor Frazier discussed

existing service levels in multiple public hearings. Dkt. 25 at ¶¶ 44–45. That allegation, if taken

as true, is sufficient to make out a plausible claim that the Board impermissibly considered "[t]he

applicant's business decision with respect to its designed service, customer demand for service,

or quality of its service to or from a particular site," and/or "[t]he applicant's specific need for the

project, including the applicant's desire to provide additional wireless coverage or capacity." Va.

Code. § 15.2-2316.4:2(A).

C.  Counts Three and Four: Unlawful Discrimination in Violation of Va. Code § 15.2-2316.4:2
and 47 U.S.C. § 332(c)(7)(B)(i)

Next, Defendants move to dismiss Counts Three and Four, which are similar claims for

unlawful discrimination under state law, Va. Code § 15.2-2316.4:2 (Count Three) and Federal

law, 47 U.S.C. § 332(c)(7)(B)(i) (Count Four).

Virginia Code Section 15.2-2316.4:2, the basis for Count Three, addresses "application

reviews" for telecommunications facilities. Subsection 5 specifically provides that localities

cannot

> discriminate or create a preference on the basis of the ownership… of any property,
> structure, base station, or wireless support structure, when promulgating rules or
> procedure for siting wireless facilities or for evaluating applications.

Section 332(c)(7)(B)(i) of Title 47 of the United States Code, the basis for Count Four,

imposes limitations on state or local governments regarding decisions over the placement, construction or modification of wireless service facilities:

> (B) Limitations.
>
>> (i) The regulation of the placement, construction, and modification of personal wireless service facilities by any State or local government or instrumentality thereof
>>
>>> (I) shall not unreasonably discriminate among providers of functionally equivalent services[.]

Ultimately, to succeed on these claims, Tillman must show (i) that it was treated differently from others "similarly situated" and (ii) that the differential treatment was unreasonable. *See Bd. of Sup'rs of Fairfax Cnty. v. McDonald's Corp.*, 544 S.E.2d 334, 338–39 (Va. 2001) (Virginia discriminatory-zoning standard); *T-Mobile NE, LLC v. Fairfax Cnty. Bd. of Sup'rs*, 759 F. Supp. 2d 756, 766 (E.D. Va. 2010), *aff'd*, 672 F.3d 259 (4th Cir. 2012) (federal discriminatory-zoning standard). Defendants argue that Tillman does not adequately allege that it is similarly situated to any other provider and that Tillman does not adequately allege that any discrimination between it and another provider was "unreasonable." Dkt. 7 at 15–16.

As with the above-discussed issues, the Court again notes the posture of this present motion—a motion to dismiss. Defendants have provided several cases going to the ultimate issues on these Counts—whether there was a similarly situated provider and whether any differential treatment between Tillman and the other provider was unreasonable. *See* Dkt. 7 at 15–17, citing *Bd. of Superv'rs of Fairfax Cnty v. McDonald's Corp.*, 544 S.E.2d at 334 (appeal of state law claim following bench trial); *Cellco P'ship v. Bd. of Supv'rs of Fairfax Cnty.*, 140 F. Supp. 3d 548 (E.D. Va. 2015) (state law claim on summary judgment); *T-Mobile NE, LLC*, 759 F. Supp. 2d at 756 (federal law claim on summary judgment). The Court holds that this motion to dismiss is not the appropriate stage of the proceedings to undertake that analysis, and the

11

question here is whether Tillman has alleged sufficient facts that, if taken as true, could make out

a plausible claim for relief under Va. Code § 15.2-2316.4:2 (four Count Three) and 47 U.S.C.

§ 332(c)(7)(B)(i) (for Count Four).

The Court holds that Tillman has alleged sufficient facts to make out a plausible claim for

relief under Counts Three and Four. The Court notes these facts alleged in the Amended

Complaint: Tillman's proposed tower would be the same height as SBA's tower (Dkt. 25 at

¶ 52); the proposed tower would be less visible from the road than SBA's tower (*id.* at ¶ 53); the

proposed tower and the SBA tower share a monopole design (*id.* at ¶ 54); and the towers would

be similarly visually obstructive (*id.* at ¶ 55). Assumed to be true for the purposes of the motion

to dismiss, those facts could plausibly meet the elements of Counts Three and Four—that there

was a similarly situated provider (SBA, or its predecessor in interest) and that Tillman was

unreasonably treated differently than that provider.

D.   Whether a Cause of Action Exists Under the Virginia Wireless Statutes

Finally, Defendants argue that no cause of action exists under any of the Virginia statutes

under which Tillman has brought a claim, and therefore Defendants argue that the Court must

dismiss each of Tillman's claims brought under those statutes—Counts Two, Three, and Five.

As discussed above, Tillman has brought Count Two under Va. Code § 15.2-

2316.4:2(A)(1), which enumerates certain factors that a locality may not consider in granting or

denying a telecommunications project. Tillman has brought Count Three under Va. Code § 15.2-

2316.4:2(D), which provides that localities may not "[d]iscriminate or create a preference on the

basis of the ownership . . . of any property, structure, base station, or wireless support structure"

when evaluating applications for telecommunications projects. In Count Five, Tillman has

brought a claim for declaratory relief under Va. Code § 15.2-2316.4:1, which provides that a

"complete application for a project shall be deemed approved if the locality fails to approve or

disapprove the application" within the statutorily enumerated timeframe, the lesser of 150 days

or the period required by federal law. The Court holds that Tillman has a cause of action under

each of the state statutory Counts because Va. Code § 15.2-2316.4:1(G) creates a right of action

for applicants adversely affected by a locality's wrongful disapproval of an application for a

telecommunications project for project applications governed by Article 7.2 of Chapter 22 of the

Virginia Code, i.e., Va. Code. § 15.2-2316, *et seq.*, and each of Tillman's Counts fall within that

cause of action.

Tillman's three state statutory causes of action—Counts Two, Three, and Five—each

arise out of Article 7.2 of Chapter 22 of the Virginia Code. That Article provides rules for how

localities must consider zoning applications for telecommunications projects. Section 15.2-

2316.4:1(A) provides that localities "may require administrative review for the issuance of any

zoning permit," and the following provisions lay out what the locality may or may not consider

during its administrative review process. Section 15.2-2316.4:1(G) provides that "[a]n applicant

adversely affected by the disapproval of an application submitted under Subsection A or for any

zoning approval required for a standard process project may file an appeal pursuant to subsection

F of § 15.2-2285 . . . within 30 days following delivery to the applicant or notice to the

applicant" of the denial. The subsection referred to therein, § 15.2-2285(F), provides:

> Every action contesting a decision of the local governing body adopting or failing
> to adopt a proposed zoning ordinance or amendment thereto or granting or failing
> to grant a special exception shall be filed within thirty days of the decision with the
> circuit court having jurisdiction of the land affected by the decision. However,
> nothing in this subsection shall be construed to create any new right to contest the
> action of a local governing body.

Defendants emphasize this last portion of § 15.2-2285(F), that "nothing in this subsection shall

be construed to create any new right to contest the action of a local governing body" (*see* Dkt. 7

at 18–19)—and it is true that § 15.2-2285(F) does not itself create a right of action. But § 15.2-2316.4:1(G) does, because it clearly provides that "[a]n applicant adversely affected by the disapproval of an application . . . may file an appeal pursuant to subsection F of § 15.2-2285." In other words, § 15.2-2316.4:1(G) creates the right of action, and § 15.2-2285(F) specifies (1) when that action must be filed (within thirty days of the locality's decision), and (2) where the action must be filed (in the circuit court having jurisdiction of the land affected by the decision).

Each of Tillman's three state statutory claims are cognizable under the cause of action provided for in § 15.2-2316.4:1(G). That provision provides a cause of action for "applicant[s] adversely affected by the disapproval of an application submitted under subsection A or for any other zoning approval for a standard process project." By "application[s] submitted under subsection A," the statute presumably means those governed by Va. Code § 15.2-2361.4:1 and § 15.2-2361.4:2, since § 15.2-2361.4:1(A) (the "subsection A" mentioned in the cause of action) governs telecommunications projects "requir[ing] administrative review for the issuance of any zoning permit," and § 15.2-2361.4:1 and § 15.2-2361.4:2 set out the rules for how localities must consider telecommunication project applications requiring administrative review. All three of Tillman's allegations arise from § 15.2-2361.4:1 (Count Five) or § 15.2-2361.4:2 (Counts Two and Three), so Tillman has a cause of action for those counts under § 15.2-2316.4:1(G).

Defendants raise a particular issue with Count Five, in which Tillman seeks a declaratory judgment that its application is "deemed approved" by operation of law under Va. Code. § 15.2-2316.4:1(D). That code section provides that a "complete application for a project shall be deemed approved if the locality fails to approve or disapprove the application" within the lesser of 150 days or the period required by federal law from the date the locality receives the

completed project application. Va. Code § 15.2-2316.4:1(D); *see also* § 15.2-2316.4:1(C)(2)(a)

(providing the timeline). Defendants argue that the only remedy this Court could offer is

mandamus (Dkt. 7 at 19–20), and that a federal court cannot issue the writ of mandamus with

respect to a state proceeding (Dkt. 16 at 18).

In *County Bd. of Arlington v. God*, 217 S.E.2d 801 (Va. 1975), the Supreme Court of

Virginia affirmed in part and reversed in part a trial court's declaratory judgment that a county

board's rezoning decision was invalid and that the appropriate remedy was for the court to place

the land in question under the zoning classification sought by the landowner. The Court affirmed

the trial court's finding that the existing zoning of the lot in question was invalid and that the

county board's rezoning was arbitrary and capricious, but reversed with respect to the remedy, a

court order rezoning the land, because the trial court "did not have the right . . . to simply rezone

the land." *County Bd. of Arlington*, 217 S.E.2d at 164–65 (citing *Bd. of Superv'rs of Fairfax

County v. Allman*, 211 S.E.2d 48, 55 (Va. 1975)). After reversing the trial court's order rezoning

the land, the Court remanded to the trial court for a new order that would

> suspend the adjudication of invalidity for a prescribed period of time and direct the
> Board to consider further legislative action. Because the evidence shows that the
> apartmenthouse use proposed by the landowner is reasonable, the new order will
> enjoin the Board during the prescribed period from taking any action which would
> disallow such use. The new order will further provide that should the Board fail to
> take appropriate action within the prescribed period, the adjudication of invalidity
> will become operative and the injunction will become permanent[.]

*Id.* at 165. Thus, under Virginia law, there is no question that a court can (1) direct a locality to

consider further legislative action upon a finding that a locality's zoning decision was unlawful,

and (2) order that, should the locality fail to take such further action within a prescribed period,

issue a permanent injunction as to the zoning decision. And it is also clear that a declaratory

order and injunction are available as relief, i.e., that mandamus is not the only remedy for a

plaintiff seeking judicial review of a locality's zoning decision.

There does, however, remain a question of whether a *federal* court can issue such a remedy. Defendants cite *Gurley v. Superior Court of Mecklenburg County*, 411 F.2d 586 (4th Cir. 1969), which held that a federal court has "no power to acquire jurisdiction or a case or question by issuing a writ of mandamus" to a state court. But that case, and the issues of federalism that it raises, are inapplicable in the present case where the form of relief requested is not mandamus to a state court, but a declaratory judgment. *See God*, 217 S.E.2d at 165 (noting the form of relief on a similar action was a temporary injunction against the locality that could turn permanent upon the locality's inaction); *Allman*, 211 S.E.2d at 55 (same).

Thus, the Court holds that Tillman has a cause of action, and that there is at least some remedy that this Court can issue, for Count Five.

Although this issue was not raised by the parties, the Court notes for the sake of completeness the fact that § 15.2-2285(F) provides that an action shall be filed "with the circuit court having jurisdiction of the land affected by the decision"—i.e., the fact that the statute contemplates filing an action in a Virginia state circuit court—does not divest this federal forum of subject matter jurisdiction over the state law causes of action. *Railway Co v. Whitton's Administrator*, 80 U.S. (13 Wall.) 270 (1872) set out the foundational principle that a state right

> cannot be withdrawn from the cognizance of such Federal court [having jurisdiction over the parties] by any provision of State legislation that it shall only be enforced in a State court. The statutes of nearly every State provide for the institution of numerous suits, such as for partition, foreclosure, and the recovery of real property in particular courts and in the counties where the land is situated, yet it never has been pretended that limitations of this character could affect, in any respect, the jurisdiction of the Federal court over such suits where the citizenship of one of the parties was otherwise sufficient. Whenever a general rule as to property or personal rights, or injuries to either, is established by State legislation, its enforcement by a Federal court in a case between proper parties is a matter of course, and the jurisdiction of the court, in such case, is not subject to State limitation.

80 U.S. (13 Wall.) at 285–86. More recent cases applying the principle from *Whitton's Administrator* have made clear that it applies to cases where the federal court exercises supplemental, in addition to diversity, jurisdiction over the state law claims. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 522 U.S. 156, 169 (1997) (holding that a provision of Illinois law establishing jurisdiction in "the [Illinois] Circuit Courts" and provided that "an action . . . may be commenced in the Circuit Court of any county" did not divest the federal courts of subject matter jurisdiction); *U.S. ex. rel. Galmines v. Novartis Pharms. Corp.*, No. 06-cv- 3213, 2013 WL 5924962 at 4–5 (E.D. Pa. Nov. 5, 2013) (discussing intersection of *Whitton's Administrator* and the federal supplemental jurisdiction statute, 28 U.S.C. § 1367, and citing different circuits' cases on the issue).

The Court holds that Tillman has causes of action under the Virginia state law claims, Counts Two, Three, and Five.

### IV.  Conclusion

Finding no reason to dismiss any of the five counts in the Amended Complaint, the Court will, in an accompanying order, deny the motion to dismiss, Dkt. 6, in full.

The Clerk of Court is directed to deliver a copy of this memorandum opinion to all counsel of record.

Entered this 11th day of May 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE