CLERKS OFFICE U.S. DIST. COURT
AT LYNCHBURG, VA
FILED

12/30/2022

LAURA A. AUSTIN, CLERK
BY:   s/ CARMEN AMOS
        DEPUTY CLERK

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF VIRGINIA
### CHARLOTTESVILLE DIVISION

|  |  |
|---|---|
| TILLMAN INFRASTRUCTURE LLC, | CASE NO. 3:21-cv-00040 |
| *Plaintiff*, | |
| v. | MEMORANDUM OPINION |
| THE BOARD OF SUPERVISORS OF CULPEPER COUNTY, VIRGINIA, *et al.*, | |
| *Defendants.* | JUDGE NORMAN K. MOON |

Plaintiff Tillman Infrastructure LLC alleges that Culpeper County, Virginia, and the Board of Supervisors of Culpeper County (collectively, "Defendants") wrongfully denied its application for a conditional use permit to build a telecommunications tower. Both parties have moved for summary judgment. Plaintiff's Summary Judgment Motion will be granted because substantial evidence does not support the Board's denial of Plaintiff's application and because the Board did not timely approve or disapprove Plaintiff's complete application. On these grounds, Defendants' Summary Judgment Motion will also be denied.

## Background

Tillman is a telecommunications company that invests in and manages cell towers and other telecommunications infrastructure. Dkt. 25 ¶ 2. On March 22, 2021, Tillman submitted paperwork to Culpeper County, proposing to construct a new telecommunications tower in the City of Rapidan, an area in the County. Dkt. 36-4 at 3–4. The paperwork stated that the "proposed site will allow wireless carriers to improve the quality of services for their customers in Culpeper County and the City of Rapidan." *Id.* at 4. It also noted that the proposed tower is

1

designed to accommodate up to four carriers and be designed as a 195-foot self-support structure with an additional four-foot lightning rod. *Id.*

At the time Tillman submitted its application, only one telecommunications tower was in the Rapidan area. Dkt. 36 ¶ 5. That 199-foot monopole tower (the "SBA Tower") had been approved for construction by the Culpeper County Board of Supervisors in April 2001 and is owned by SBA Towers III, LLC ("SBA"). Dkt. 41 at 2. AT&T and Verizon Wireless lease space at the SBA Tower for placement of communications equipment. *Id.* at 2. Claiming unreasonable fees and costs to use the SBA Tower, AT&T sought to work with Tillman to build a more affordable tower in the area. *See id.* at 3. The proposed tower was to be built in the Cedar Mountain Battlefield area, Dkt. 41-17 at 2–3, and located 0.54 miles from N. James Madison Highway, a designated Virginia Scenic Byway, Dkt. 36-12 at 94.

On April 8, 2021, the Zoning Administrator emailed the Tillman representative:

In an abundance of caution[,] I am writing to confirm that your complete submission is still under a dropbox folder named: *15862-Pre-App Zoning Package* and contains **16** files in total?

I want to make sure these files are indeed the finalized submission and not earlier versions that you uploaded for the pre-app meeting.

Maybe rename the folder and reshare?

Any case please confirm that these are the latest.

*Id.* at 45, 58 (emphasis in original). On that same day, the Tillman representative responded that she had "renamed the folder '15682-Zoning Application Package'" and clarified "[t]here are 17 docs in all." *Id.* at 46, 57. The Zoning Administrator replied by thanking the representative "for buttoning things up" and stated he would "be in touch if [he saw] something missing." *Id.* at 51, 56. The Tillman representative then emailed a scanned copy of a check for the application fee. *Id.* at 54–55.

The County contracted CTA Consultants, LLC ("CTA") to provide a comprehension review of Tillman's conditional use permit application and its proposed tower. Dkt. 36-4 at 245. In CTA's technical review report, issued on May 12, 2021, it found that Tillman's application complied "with the County's application process, tower ordinances, and other applicable codes for telecommunications support structures." *Id.* To remain in compliance with County ordinances, CTA recommended several conditions, including that "AT&T FirstNet equipment must be present on the proposed tower after construction for the new tower to be considered an emergency service tower." *Id.*

The County Department of Development Planning and Zoning staff agreed with CTA's recommendation. Dkt. 36-12 at 85. On June 9, 2021, the County Planning Commission held a public hearing. Dkt. 36-4 at 138. Prior to the hearing, SBA's counsel sent a letter of opposition on June 7, 2021, claiming the proposed tower was not needed and that the SBA Tower provided sufficient coverage. Dkt. 36-7 at 6. Following the hearing, the Commission recommended by a unanimous vote that the Board approve the application with certain conditions, including requiring Tillman to install FirstNet for its tower to qualify as an emergency service tower. Dkt. 36-4 at 139. The Commission also found by an 8–1 vote that "the subject-proposal's general or approximate location, character and extent are substantially in accord with the County's Comprehensive Plan." *Id.* at 138.

On July 6, 2021, the Board considered Tillman's application at a public hearing. *See* Dkt. 36-13 at 69–168. Prior to the hearing, Supervisor Frazier asked Tillman to convert its tower design from a lattice-design to a monopole-design. *Id.* at 88. During the hearing, the Tillman representative stated that Tillman would change its design to a monopole-design. *Id.* At the conclusion of the hearing, the Board decided to defer voting on the application to allow

SBA and AT&T time to negotiate an agreement. *Id.* at 118–22. The Board hoped they could find

an agreement whereby AT&T would not need another tower to be built in the area. *Id.*

In an email sent on July 29, 2021, the County Director of Planning and Zoning Samuel

McLearen stated:

> Just an FYI. I received this [attachment] yesterday relating to the Tillman Infrastructure
> cell tower use permit request that is scheduled to come back to the [Board] in October. I
> am filing this with the case file information. Basically[,] they submitted documentation as
> part of their ongoing NEPA certification/review stating their proposed structure is now a
> "monopole" and not a lattice structure. Same height, so it really doesn't impact our
> review.

Dkt. 36-9 at 116.

In a December 2020 letter regarding Tillman's early proposal to construct a tower, the

American Battlefield Trust requested that a balloon test be performed to assess the visual effect

the tower could, if any, have on the Battlefield area. Dkt. 41-17 at 2–3. A balloon test entails

floating a balloon to the same height as the proposed tower at the tower location, and then

observing whether the balloon is visible from several other locations to assess the proposed

tower's visual impact. *See* Dkt. 36 ¶ 23. Tillman shared the results of its first balloon test in its

application for the conditional use permit. Dkt. 36-16 at 2–3. The balloon test results showed that

the visual impact on the surrounding area would be minimal. *See* Dkt. 36-12 at 85 (The County

Department of Development Planning and Zoning stated that Plaintiff "conducted a balloon test

… [and the] impact on the surrounding area [] appears to be minimal"); *id.* at 94 (CTA provided

that "the proposed tower is minimally visible from the Virginia Scenic Byway" based on the

balloon test simulation).

On July 16, 2021, Tillman representatives met with representatives of historic

preservation groups, including the Architectural Historians of Johnson, the Mirmiran, and

Thompson, Inc., the Friends of Cedar Mountain Battlefield, and the American Battlefield Trust,

and Tillman's consultant, Trileaf, to perform a second balloon test. Dkt. 36 ¶ 23; Dkt. 36-16 at 2–4. The balloon test results showed that the proposed tower would not be visible from any of the locations observed during the balloon test and that there would be "no new visual impacts to the Cedar Mountain Battlefield." Dkt. 36-16 at 5.

On August 4, 2021, the County received a notification that the second balloon test results had been uploaded, and on August 6, 2021, the County was notified that these results had been shared with the Friends of Cedar Mountain Battlefield, the American Battlefield Trust, and the Piedmont Environmental Council. *See* Dkt. 36-11 at 20–21. On September 9, 2021, the Virginia State Historic Preservation Office determined that the second balloon test results showed that the proposed tower would have no adverse effect on the historic properties. *Id.* at 22.

The Board reheard arguments regarding Tillman's application on October 5, 2021. Dkt. 36-13 at 125–68. At the hearing, the Tillman representative informed the Board that AT&T and SBA were unable to reach an agreement on the SBA Tower's costs and asked the Board to follow CTA's and the Planning Commission's recommendations. *Id.* at 136–38, 140. On October 5, 2021, the Board unanimously denied Tillman's conditional use permit application. *Id.* at 166–67.

The Board's Resolution[1] stated that it denied the application for the following reasons:

---

[1] Plaintiff argues that the Resolution should not be considered part of the record because it was mailed to Tillman on October 19, 2021, which was fourteen days after the Board decided to deny the application. Dkt. 36 at 3 n.1. Plaintiff argues that "[a] locality may not provide post hoc rationalizations in support of its actions." *Id.* (citation omitted). To support this argument, Plaintiff cites *T-Mobile S., LLC v. City of Roswell*, 574 U.S. 293, 295 (2015). In *Roswell*, the Supreme Court held that when a locality denies a request, it does not have to provide its reasons in the written denial letter or notice "so long as the reasons are sufficiently clear and are provided or made accessible to the *applicant essentially contemporaneously* with the written denial letter or notice." 574 U.S. at 295 (emphasis added). The Court finds that the Resolution is part of the record because it was the first written denial sent to Plaintiff. The Supreme Court clarified that the "final action" for a locality's denial is "the issuance of the *written* notice of denial." *Id.* at 305 n.4 (emphasis added). As such, *Roswell* is no barrier to this Court's consideration of the

(1) it failed to meet the general standards for use permits as set forth in the County's Zoning Ordinance; (2) it would "affect adversely the health or safety of persons residing or working [in] the neighborhood;" (3) it would "be detrimental to the public welfare or injurious to property or improvements in the neighborhood;" (4) it conflicted with purposes of the County's Comprehensive Plan; (5) it was to be built within one-quarter mile of an existing viable tower and thus conflicted with the Comprehensive Plan's preference for encouraging co-location on existing towers; and (6) "there was no finding by majority vote that this proposed tower served a demonstrated safety need or that it would enhance or expand communications in the area." Dkt. 41-18 at 2.

## Standard of Review

### A.  Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable [fact finder] could return a verdict for the nonmoving party," and "[a] fact is material if it might affect the outcome of the suit under the governing law." *Variety Stores, Inc. v. Wal-Mart Stores, Inc.*, 888 F.3d 651, 659 (4th Cir. 2018).

The moving party bears the burden of establishing that summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If the moving party meets this burden, the nonmoving party must set forth specific, admissible facts to demonstrate a genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant may not rest on allegations in the pleadings; rather, it must present sufficient

---

Resolution since it was the Board's first written denial.

evidence such that a reasonable fact finder could find by a preponderance of the evidence for the non-movant. *See Celotex Corp.*, 477 U.S. at 322–24; *Sylvia Dev. Corp. v. Calvert Cnty, Md.*, 48 F.3d 810, 818 (4th Cir. 1995). The district court must "view the evidence in the light most favorable to the nonmoving party" and "refrain from weighing the evidence or making credibility determinations." *Variety Stores, Inc.*, 888 F.3d at 659.

When cross-motions for summary judgment are before a court, a court must "consider each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." *Defs. of Wildlife v. N.C. DOT*, 762 F.3d 374, 392 (4th Cir. 2014) (quoting *Bacon v. City of Richmond, Va.*, 475 F.3d 633, 638 (4th Cir. 2007) (internal quotation marks omitted)).

### B.  Substantial Evidence

The Telecommunications Act of 1996 (the "Act") "sought to limit the ability of state and local governments" from frustrating the "national purpose of facilitating the growth of wireless telecommunications" while also "preserv[ing] state and local control over the siting of towers and other facilities that provide wireless services." *T-Mobile Ne. LLC v. City Council of City of Newport News, Va.*, 674 F.3d 380, 385 (4th Cir. 2012) (internal quotation marks omitted). To strike this balance, the Act "imposes several restrictions on local authority." *USCOC of Virginia RSA #3 v. Montgomery Cnty. Bd. of Sup'rs*, 343 F.3d 262, 267 (4th Cir. 2003). One such restriction requires that a local government's decision "to deny a request to place, construct, or modify personal wireless service facilities" must be "in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii).

A reviewing court must "determine whether substantial evidence supports the [local government's] decision 'to *deny* a request.'" *T-Mobile Ne. LLC*, 674 F.3d at 387 (citing 47 U.S.C. § 332(c)(7)(B)(iii) (emphasis added)). "'Substantial evidence' is more than a mere scintilla, but less than a preponderance." *Id.* at 385 (citation omitted). It is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *AT & T Wireless PCS, Inc. v. City Council of City of Virginia Beach*, 155 F.3d 423, 430 (4th Cir. 1998) (quoting *Universal Camera v. NLRB,* 340 U.S. 474, 488 (1951)). When reviewing "the decision of a local elected body, a 'reasonable mind' is the mind of a reasonable legislator." *T-Mobile Ne. LLC*, 674 F.3d at 385 (citation omitted). A court "must uphold a decision that has 'substantial support in the record as a whole' even if it might have decided differently as an original matter." *Id.* (quoting *NLRB v. Grand Canyon Mining Co.*, 116 F.3d 1039, 1044 (4th Cir. 1997)).

## Discussion

In its Summary Judgment Motion, Plaintiff asserts that the Board's denial of its application (1) is not supported by substantial evidence in the record, in violation of 47 U.S.C. § 332(c)(7)(B)(iii) (Count I), (2) was based on customer demand for service and quality of its service to or from a particular site, in violation of Va. Code § 15.2-2316.4:2(A) (Count II), and (3) constituted unlawful discrimination, in violation of Va. Code § 15.2-2316.4:2(B) and 47 U.S.C. § 332(c)(7)(B)(i)(I) (Counts III & IV). Dkt. 36. Plaintiff also seeks a declaratory judgment that its application was approved pursuant to Va. Code § 15.2-2316.4:1(C)-(D) because the Board did not deny its complete application within 150 days of receiving it and that that the Board's purported denial of its application is void because such application was already approved (Count V). *Id.* Defendants deny these contentions, Dkt. 46, and also move for summary

judgment, Dkt. 40.

The Court will grant Plaintiff's Summary Judgment Motion because (1) substantial evidence does not support the Board's denial and (2) the Board did not approve or disapprove Plaintiff's complete application within 150 days of receiving it, as required by state law. For these reasons, the Court will also deny Defendants' Summary Judgment Motion.

### A. The record fails to demonstrate substantial evidence for the Board's denial.

The Court, in considering the rationales offered by Defendants, determines that no rationale, weighed separately or together "as a whole," supports a reasonable legislator denying Plaintiff's application for a conditional use permit to build the proposed tower. *T-Mobile Ne. LLC*, 674 F.3d at 386 (citation omitted). As such, the Court concludes that the Board wrongfully denied Plaintiff's application in violation of 47 U.S.C. § 332(c)(7)(B)(iii).

#### 1. Rationale 1: County's Preference for Co-location

The first rationale offered in support of the Board's denial is that Plaintiff's application conflicted with the County's preference for co-location of wireless equipment. Dkt. 41 at 12; Dkt. 41-18 at 2. The 2015 County Comprehensive Plan provides "[c]o-location of equipment on existing structures is encouraged when possible and is preferable to construction of new towers." Dkt. 41 at 11.

In support of this first rationale, Defendants note public comments raising concern about the proposed tower being built close to an existing tower. Dkt. 41 at 11–12. For example, at the June 9, 2021 hearing, Planning Commissioner Clancy stated, "I'm just concerned with our hands being kind of tied with the co-location." Dkt. 41-11 at 5. At the October 5, 2021 hearing, one speaker stated, "I'm all for competition, but those towers are just too close together to make any

sense to put . . . another one there," and another stated "[w]hy should a tower a rock throw from another be installed? There's no logic to that whatsoever." Dkt. 41-16 at 36–37.

Plaintiff claims this rationale is not supported by substantial evidence because the County's co-location preference did not apply to its application. Dkt. 36 at 11. Under County Ordinance § 17-6-3.8, Plaintiff claims that the SBA Tower was not "available" to AT&T due to the SBA Tower's unreasonable fees, costs, and contract provisions. *Id.* The County Ordinance provides:

> *Availability of Suitable Existing Towers or Other Structures*. No new tower shall be permitted unless the applicant clearly demonstrates to the reasonable satisfaction of the Board of Supervisors that no existing tower or structure or an alteration, extension or adaptation thereof can accommodate the applicant's proposed antenna. Evidence submitted to demonstrate that no existing tower or structure or an extension thereof can accommodate the applicant's proposed antenna may consist of any of the following . . . .
>
> e. The fees, costs, or contractual provisions required by the owner in order to share an existing tower or structure or to extend, adapt or alter an existing tower or structure for sharing are unreasonable.

Culpeper Cnty. Zoning Ord. § 17-6-3.8.[2]

For this rationale, the relevant inquiry is whether substantial evidence supports the application of the County's co-location preference, which is triggered unless the SBA Tower had unreasonable fees and costs. *See T-Mobile Ne. LLC*, 674 F.3d at 387 (emphasizing courts should "ask only whether the *denial*—not the application itself—is supported by substantial evidence"). Thus, the Court must assess the record to determine whether substantial evidence supports a finding that the SBA Tower's fees and costs were reasonable.[3]

---

[2] A court evaluating rationales for denying an application can "look to the applicable zoning ordinance to determine whether the reasons for the [Board's] decision are contemplated therein." *T-Mobile Ne. LLC*, 674 F.3d at 387.

[3] The parties dispute the appropriate legal standard. Defendants argue the Court should ask whether "a reasonable legislator could conclude that SBA's rates were not objectively unreasonable." Dkt. 46 at 5. Plaintiff claims that "the pertinent question is whether there was substantial evidence supporting the denial, i.e., whether there was evidence that the SBA Tower

Even though there is no evidence in the record on the exact amount AT&T paid to lease the SBA Tower,[4] substantial evidence does not support a finding that the SBA Tower had reasonable fees and costs, such that it was available within the meaning of County Ordinance § 17-6-3.8(e). During their review of the conditional use permit application, Defendants were informed by AT&T's Director of Network Planning in an affidavit that the "current rent charged by SBA to co-locate on the SBA Tower is over two times what" Plaintiff would charge. Dkt. 36-6 at 107; *see* Dkt. 36-11 (An email sent by Plaintiff's representative on May 7, 2021 to CTA containing AT&T's affidavit). Additionally, Defendants were told that AT&T continuing to lease the SBA Tower over the next twenty years would cost it two million dollars more than leasing Plaintiff's proposed tower. Dkt. 36-6 at 107. The AT&T representative further noted that anytime AT&T sought to improve its wireless facilities on the SBA Tower, it had to pay an application fee and proceed through an administrative review process, which could take several months. *Id.* at 108. In comparison, under its agreement with Plaintiff, Plaintiff would not require costly amendments or charge administrative fees when carriers desired to swap equipment. *Id.* at 100 (Plaintiff's letter sent to the County on January 7, 2021 stating it does not require costly amendments to equipment changes or administrative fees when carriers swap out equipment); *see id.* at 109.

Moreover, the evidence of Verizon's renewed lease agreement and SBA's statements that

---

was available and that its rent and its contract terms were reasonable." Dkt. 36 at 13. Defendants articulate the incorrect legal standard because the Fourth Circuit has emphasized that courts should "ask only whether the *denial*—not the application itself—is supported by substantial evidence." *T-Mobile Ne. LLC*, 674 F.3d at 387. However, even if the Court applied Defendants' proposed legal standard, substantial evidence in the record supports a conclusion that the SBA Tower's fees and costs were unreasonable.

[4] Plaintiff "does not have access to SBA's lease agreements." Dkt. 48 at 4. Additionally, the evidence in the record confirms that AT&T declined to provide a copy of its lease agreement with SBA to the County's consultants, CTA, during its technical review "due to legal reasons." Dkt. 36-12 at 96.

its tower's costs were reasonable, as relied upon by Defendants, is not enough to show that the SBA Tower's fees and costs were reasonable. *See* Dkt. 46 at 5. Verizon renewed a master license agreement ("MLA") that applied to all the SBA sites across the United States. Dkt. 48 at 6. Unlike Verizon, AT&T did not have an MLA with SBA and instead negotiated its leases with SBA on an ad hoc basis. *Id.* As such, the comparison to Verizon's contract does not support that the SBA Tower's fees and costs were reasonable to AT&T since AT&T operated under a different contract model than Verizon. Additionally, SBA's statements are not enough to show substantial evidence because they are mainly conclusory assertions. *See* Dkt. 36-7 at 7 (SBA's letter sent to the County on June 7, 2021 stating its rates are "not prohibitive" and its current rent is in accordance with "market rates" and "the additional space and structural capacity needed for AT&T's upgrades"). Thus, Defendants fail to present sufficient evidence to show that a reasonable fact finder could find by a preponderance of the evidence for them on this issue. *See Celotex Corp.*, 477 U.S. at 322–24.

Considering that leasing the SBA Tower would have been significantly more costly for AT&T than leasing Plaintiff's proposed tower, the Court finds that substantial evidence does not support a finding that the SBA Tower's fees and costs were reasonable, such that the SBA Tower was available to AT&T within the meaning of County Ordinance § 17-6-3.8(e). The Court also finds that the record provides substantial evidence to support a conclusion that the SBA Tower's fees and costs were *unreasonable*. Thus, because the County's co-location preference does not apply to Plaintiff's application, this rationale fails to constitute substantial evidence for the Board's denial.

2. *Rationale 2: Proposed Tower's Health and Safety Effects*

In its Resolution, the Board denied Plaintiff's application, in part, because it would

"affect adversely the health or safety of persons residing or working [in] the neighborhood."

Dkt. 41-18 at 2. Such a rationale is not permitted under the Act.

The Act prohibits the regulation of wireless service facilities based on "the environmental effects of radio frequency emissions to the extent that such facilities comply with the Commission's regulations concerning such emission." 47 U.S.C. § 332(c)(7)(B)(iv). The "phrase 'environmental effects' includes health concerns." *T-Mobile Ne. LLC*, 674 F.3d at 390 n.2 (citing *AT & T Wireless PCS, Inc.*, 155 F.3d at 431 n.6). The Fourth Circuit has emphasized that "the potential health effects flowing from the grant of a conditional use permit have no place in a decision to deny a permit." *Id.* at 390 (citing 47 U.S.C. § 332(c)(7)(B)(iv)). Accordingly, this rationale cannot form the basis for substantial evidence.

   *3. Rationale 3: Proposed Tower's Safety Need and Enhancement*

The Board also denied the application, in part, because it failed to demonstrate a "safety need or that it would enhance or expand communications in the area." Dkt. 41-18 at 2. Under Virginia law, a locality cannot disapprove an application based on customer demand for service, quality of its service to or from a particular site, or the applicant's specific need for the project. Va. Code § 15.2-2316.4:2(A). This rationale relating to the proposed tower's quality of service and the specific need for the tower cannot form the basis of substantial evidence since Defendants are prohibited under state law from considering such a rationale.

   *4. Rationale 4: Proposed Tower's Proximity to Scenic Byway*

Next, Defendants claim the Board denied Plaintiff's application, in part, because the proposed tower violated a County ordinance by being located within less than a mile of a scenic byway. Dkt. 41 at 13. The proposed tower would have been located 0.54 miles away from N. James Madison Highway, a designated Virginia Scenic Byway. Dkt. 36-12 at 94. The relevant

County Ordinance provides:

> The guidelines set forth in this section shall govern the location of all towers and the installation of all antennas governed by this ordinance; provided, however, that the Board of Supervisors may waive any of these requirements if it determines that the goals of this ordinance are better served thereby . . . .
>
> g. Towers shall be located a minimum of one mile from any designated Virginia Scenic Byway. This provision **shall not apply to Emergency Communication Towers.**

Culpeper Cnty. Zoning Ord. § 17-6-3.3 (emphasis added).

Plaintiff claims its application was exempted from this County Ordinance because the proposed tower would have included FirstNet, thus qualifying it as an emergency communication tower. Dkt. 36 at 15; *see also* Dkt. 36-6 at 19. Defendants counter that there were "serious doubts . . . as to whether the proposed tower would actually receive the FirstNet equipment necessary to classify it as an emergency communications tower." Dkt. 46 at 3. They note that the Board heard testimony from Plaintiff "that FirstNet might *never* be installed on the Tower" and that "the initial CTA report confirmed the possibility that the proposed tower may never become an emergency communications tower." *Id.* at 9.

However, the record does not support Defendants' claims. First, in response to Supervisor Bates recommending that AT&T and SBA "need to sit down and get this [leasing] thing hashed out," Plaintiff's representative stated:

> [I]f AT[&]T and SBA come to an agreement, there wouldn't be a second tower. So[,] I think that's something to keep in mind, both because you've got a condition that requires FirstNet on this new tower. If FirstNet doesn't come, if AT[&]T doesn't come, there wouldn't—we wouldn't be able to satisfy that condition. So, just because you approve a second tower, doesn't necessarily mean that it'll be built.

Dkt. 36-13 at 100. Defendants cite this statement to support their proposition that Plaintiff might never install FirstNet. *See* Dkt. 46 at 9. However, considering the full statement and context surrounding it, the Court finds that the representative was merely explaining that Plaintiff needed

14

to install FirstNet on its tower to comply with County Ordinance § 17-6-3.3.

Second, the CTA report fails to support Defendants' claim that "the proposed tower may never become an emergency communications tower." Dkt. 46 at 9. CTA recommended that the Board, if it decided to approve Plaintiff's application, "mandate the installation of FirstNet" and "reserve the right to terminate the permit if the conditions imposed on it are not met." Dkt. 48 at 9. This evidence does not support that the proposed tower may not have become an emergency communication tower; rather, it shows that CTA recommended that the Board mandate in the conditional use permit that Plaintiff install FirstNet. As with any other conditional use permit, if a condition is not met, the permit may be terminated. And notably, the record supports that Plaintiff planned on installing FirstNet. For example, Plaintiff's pre-application paperwork submitted in March 2020 stated:

> The anchor carrier, AT&T, has a partnership with FirstNet for emergency services on future towers. The proposed tower has the capacity to have the FirstNet equipment installed to provide those services to the area.

Dkt. 36-5 at 63; *see also* Dkt. 36-4 at 6 (providing that Plaintiff's proposed tower would have been constructed using Band 14 spectrum, which "is nationwide, high[-]quality spectrum set aside by the government specifically for FirstNet"); Dkt. 36-12 at 94.

Defendants also claim that "the record does not support that a new emergency communication tower was even needed in that area such that the Board would be inclined to waive the requirement." Dkt 41 at 13. They further claim that "any argument that [Plaintiff] would have as to why the proposed tower was necessary evaporate[s]" once "SBA represented that it would accommodate FirstNet equipment rent free" on its tower. *Id.*

Again, Defendants' arguments are unpersuasive. The County Ordinance does not require that an applicant's tower be the only emergency communication tower in the area or that the

Board approve a new emergency communication tower based on need. *See* Culpeper Cnty.

Zoning Ord. § 17-6-3.3(g). The Ordinance only clarifies that an emergency communication

tower does not have to "be located a minimum of one mile from any designated Virginia Scenic

Byway." *Id.* Additionally, Virginia law forbids a county from denying an application based on its

quality of service. *See* Va. Code § 15.2-2316.4:2(A)(1)(a) (providing a locality cannot

disapprove an application "on the basis of . . . its designed service, customer demand for service,

or quality of its service to or from a particular site"). Thus, not only is Defendants' reasoning not

supported by the plain text of the County ordinance, but it is also explicitly forbidden by Virginia

law.

Because the record demonstrates that Plaintiff intended and could have been required to

install FirstNet on its tower, Defendants' fourth rationale is not supported by substantial

evidence.

   5. *Rationale 5: Proposed Tower's Adverse Effect on the Battlefield*

Lastly, Defendants claim the Board denied Plaintiff's application, in part, because it

would have adversely affected the Cedar Mountain Battlefield. Dkt. 41 at 12. They assert that

"multiple constituencies active in [the] County had voiced concerns about the impact of the

proposed tower in such a historically sensitive area." Dkt. 46 at 7. For instance, they reference

Supervisor Frazier stating at the October 5, 2021 hearing that "Cedar Mountain Battlefield is in

that area, and [the proposed tower] does infringe on Cedar Mountain Battlefield areas." Dkt. 36-

13 at 141. Supervisor Bates also expressed that people in the County were "very sensitive to

[their] Civil War Battlefields." Dkt. 41-13 at 31. Defendants further note that the American

Battlefield Trust and the Piedmont Environmental Council sent letters of concern to the County.

Dkts. 41 at 14.

The Fourth Circuit has previously considered "[t]he number of persons expressing concerns," but that "standing alone, does not make evidence substantial." *Petersburg Cellular P'ship v. Bd. of Sup'rs of Nottoway Cnty.*, 205 F.3d 688, 696 (4th Cir. 2000); *see, e.g.*, *T-Mobile Ne. LLC*, 674 F.3d at 389 (emphasizing "the absence of repeated and widespread opposition," in part, to uphold a court's summary judgment order that found that an application's denial was not supported by substantial evidence) (internal quotation marks omitted); *AT & T Wireless PCS, Inc.*, 155 F.3d at 430 (highlighting "the repeated and widespread opposition of a majority of the citizens . . . who voiced their views" in finding substantial evidence to support the denial of a permit).

The existence of opposition to Plaintiff's proposed tower being built in the Battlefield area is questionable. Only two interest groups, the American Battlefield Trust and the Piedmont Environment Council, expressed concern. In a December 2020 letter regarding Plaintiff's early proposal to construct a tower, the American Battlefield Trust (1) requested that a balloon test be performed to assess the visual effect the tower could, if any, have on the Battlefield area and (2) asked to serve as a consulting party to review whether the proposed tower would have an adverse effect on the historical property. Dkt. 41-17 at 2–3. On June 9, 2021, the Piedmont Environmental Council sent a letter stating that it had "concerns about the adverse impacts" that the proposed tower "would have on the historic and scenic viewsheds." Dkt. 41-19 at 2. However, the groups raised these concerns prior to the July 2021 balloon test, and neither group raised concerns after the July 2021 balloon test results were shared with them. There is no evidence showing that the interest groups' concerns were not alleviated by these balloon test results. Thus, these concerns raised prior to the July 2021 balloon test are insufficient to form substantial evidence for Defendants' denial.

Moreover, the results of the second balloon test, completed on July 16, 2021, showed that the proposed tower would not be visible from any of the locations observed during the balloon test and that there would be "no new visual impacts to the Cedar Mountain Battlefield." Dkt. 36-16 at 5. On September 9, 2021, the Virginia State Historic Preservation Office found that the second balloon test results showed that the proposed tower would have no adverse effect on the historic properties. Dkt. 36-11 at 22. A reasonable legislator, assessing this evidence at the time of their decision, could not reasonably conclude that the proposed tower would have adversely impacted the Battlefield.

6. *Weighing Defendants' Rationales*

Defendants' denial must be upheld if it is "substantial[ly] support[ed] in the record as *a whole*." *T-Mobile Ne. LLC*, 674 F.3d at 385 (internal quotation marks omitted) (emphasis added). Defendants generally assert the Board's denial was grounded in zoning principles adopted in the County's Comprehensive Plan and ordinances. *See* Dkt. 46 at 11. The Court finds that Defendants have not proffered any rationale, weighed individually and collectively, that constitutes substantial evidence to support the Board's decision to deny Plaintiff's application. *See generally T-Mobile Ne. LLC*, 674 F.3d at 390–91 (finding the record did not support the city's denial of the conditional use permit application).

In *USCOC of Virginia RSA #3*, a case relied upon by Defendants, the Fourth Circuit held that the Board's denial of the 240-foot tower application was based on substantial evidence in the written record. 343 F.3d 262 at 271–72. The Fourth Circuit found that there was "ample support for a reasonable legislator" to deny the application for the lattice tower because (1) the proposed tower failed to conform with the zoning requirements in the County's Comprehensive Plan; (2) "the Comprehensive Plan and Regional Approach discourage[d] the construction of new towers"

18

on the land; and (3) "the Regional Approach disfavor[ed] the use of lattice towers." *Id.* at 272. The court thus concluded that the Board's decision to deny the application was because of "inconsistencies with [the] County's zoning ordinances and land use guidelines." *Id.* at 271.

Here, the evidence is different than in *USCOC of Virginia RSA #3* because various entities associated with the County found that Plaintiff's application complied with the County's zoning requirements. The County's consultants, CTA, found that the application "complie[d] with the County's application process, tower ordinances, and other applicable codes for telecommunications support structures." Dkt. 36-4 at 245. To remain in compliance with County ordinances, CTA recommended several conditions, including requiring the installation of FirstNet. *Id.* The County Department of Development Planning and Zoning staff concurred with CTA's recommendation. Dkt. 36-12 at 85. Following a hearing on Plaintiff's application, the County Planning Commission found by an 8–1 vote that "the subject-proposal's general or approximate location, character and extent are substantially in accord with the County's Comprehensive Plan." Dkt. 36-4 at 138. And it recommended by a unanimous vote that the Board approve the application with certain conditions, including requiring Plaintiff to "install and incorporate equipment on the new tower that is associated with FirstNet." Dkt. 36-4 at 139. Thus, in addition to supporting that Plaintiff's application complied with the County's zoning requirements, this evidence further supports that the Board could have mandated the installation of FirstNet as a condition of the use permit to ensure Plaintiff's tower remained in compliance with County Ordinance § 17-6-3.3.

Viewing the evidence in the light most favorable to Defendants, the Court determines there is no genuine dispute of material fact regarding whether substantial evidence supports the denial. Accordingly, the Board improperly denied Plaintiff's application in violation of 47

U.S.C. § 332(c)(7)(B)(iii).

**B. Plaintiff's application was approved as a matter of state law because the Board did not timely approve or disapprove Plaintiff's complete application.**

Under Virginia law, the Board was required to notify Plaintiff that its application was incomplete within ten business days of receiving it. Va. Code § 15.2-2316.4:1(C)(1). Failure to provide such notice results in Plaintiff's application being "deemed complete." *Id.* The Board was also required to approve or disapprove Plaintiff's complete application for a new structure "within the lesser of 150 days of receipt of the completed application or the period required by federal law for such approval or disapproval." *Id.* § 15.2-2316.4:1(C)(2). The parties agree that the 150-day period applies to this dispute. Thus, if the Board failed to approve or disapprove Plaintiff's complete application within 150 days of receiving it, Plaintiff's application must be "deemed approved." *Id.* § 15.2-2316.4:1(D).[5]

The parties dispute when Plaintiff submitted its application. Plaintiff claims it submitted

---

[5] "C. The processing of any application submitted under subsection A or for any zoning approval required for a standard process project shall be subject to the following:

1. Within 10 business days after receiving an incomplete application, the locality shall notify the applicant that the application is incomplete. The notice shall specify any additional information required to complete the application. The notice shall be sent by electronic mail to the applicant's email address provided in the application. If the locality fails to provide such notice within such 10-day period, the application shall be deemed complete.

2. Except as provided in subdivision 3, a locality shall approve or disapprove a complete application:

  a. For a new structure within the lesser of 150 days of receipt of the completed application or the period required by federal law for such approval or disapproval;. . . .

D. A complete application for a project shall be deemed approved if the locality fails to approve or disapprove the application within the applicable period specified in subdivision C 2 or any agreed extension thereof pursuant to subdivision C 3." Va. Code § 15.2-2316.4:1(C)-(D).

its application on March 22, 2021 and did not receive any communication regarding its application until April 8, 2021, more than ten business days after its submission. Dkt. 36 at 23. In the alternative, Plaintiff claims that even if the Court concludes that its application was submitted on April 8, 2021, when it paid the application fee, the Board still failed to provide notice of incompleteness within ten business days of April 8. Dkt. 48 at 17. Defendants contend that the application was completed on May 13, 2021, when CTA purportedly issued its report,[6] and prior to that, Plaintiff had only submitted pre-application paperwork. Dkt. 41 at 25.

Viewing the evidence in the light most favorable to Defendants, the Court finds that Plaintiff only submitted *pre-application paperwork* on March 22, 2021, because Plaintiff had not yet paid the application fee and the dropbox folder containing Plaintiff's pre-application paperwork was titled "15862-Pre-App Zoning Package." Dkt. 36-12 at 45, 54. However, on April 8, 2021, Plaintiff renamed the folder containing its application paperwork to "15682-Zoning Application Package" and emailed a scanned copy of a check for the application fee. *Id.* at 46, 54–55. As such, the Court finds that there is no genuine dispute that Plaintiff submitted its application on April 8, 2021.

Defendants' argument that the application was completed on May 13, 2021 has no legal grounding. If Defendants had found Plaintiff's application incomplete after April 8, they were required under Virginia law to provide notice of such incompleteness by April 22, which was ten business days after Plaintiff submitted its application. The statutory framework of Va. Code § 15.2-2316.4:1(C)(1) is aimed at "prevent[ing] localities from delaying applications by inaction." *Rather v. Madison Cnty. Bd. of Supervisors*, 108 Va. Cir. 132 at *2 (2021). As such, "whether an application is complete or not, if it sits on the desk of the [County] for more than ten

---

[6] Notably, the record reflects that CTA submitted its report on May 12, 2021 and not on May 13, 2021 as alleged by Defendants. *See* Dkt. 36-4 at 244.

(10) business days, it shall be deemed complete." *Id.*

Based on a review of the record, Plaintiff submitted its application on April 8 and Defendants failed to provide any notice of the application being incomplete within ten business days. Thus, Plaintiff's application was deemed complete no later than April 22. *See* Va. Code § 15.2-2316.4:1(C)(1).

The Court must next determine whether the Board approved or disapproved the complete application within 150 days of receiving it as required by Va. Code § 15.2-2316.4:1(C)(2)(a). The Board rejected Plaintiff's application on October 5, 2021, which was approximately 166 days after Plaintiff's application was deemed complete. *See* Dkt. 36-13 at 166-67. However, Defendants argue that Plaintiff "submitted a substantively different application on July 28, 2021" when it amended its application from a lattice-design to a monopole-design. Dkt. 46 at 16. They claim this new change required additional reviews and was such a substantial change that it re-started the 150-day clock under Virginia law. *Id.* at 18–19.

The Court finds this argument unpersuasive on legal and factual grounds. Defendants fail to cite any case as authority for the argument that a change to a monopole-design restarts the 150-day clock. *See* Dkt. 41 at 25–26; Dkt. 46 at 18–19. Additionally, nothing in the Virginia Code supports that a substantial change to an application restarts the clock for approval or denial. *See* Va. Code § 15.2-2316.4:1(C)-(D). However, even assuming a substantial change to an application restarts the 150-day clock under Virginia law, the record fails to show that Plaintiff's design change to a monopole-design was substantial. Plaintiff decided to change its tower's design only after Supervisor Frazier requested the change. Dkt. 36-13 at 88. And once the change was made, the County Director of Planning and Zoning stated in a July 2021 email that the change from a lattice-design to a monopole-design "really doesn't impact our review" because

22

the structures of both designs were the same height. Dkt. 36-9 at 116. Moreover, there is no evidence to support that Defendants found this change substantial during their review of Plaintiff's application.[7]

Because Plaintiff's application was deemed complete no later than April 22, 2021 and the Board failed to disapprove Plaintiff's complete application within 150 days of receiving it, Plaintiff's application was approved as a matter of state law. *See* Va. Code § 15.2-2316.4:1(C)-(D).

## Conclusion

For these reasons, the Court will grant Plaintiff's Summary Judgment Motion based on Counts I and V in the Amended Complaint, Dkt. 25, and will issue a declaration that Plaintiff's application was deemed approved as a matter of state law and that the Board's purported denial of its application is void. Thus, Counts II, III, and IV will be rendered moot. The Court will also deny Defendants' Summary Judgment Motion because, as discussed throughout the opinion, substantial evidence does not support the Board's denial of Plaintiff's application and the Board failed to deny Plaintiff's complete application within 150 days of receiving it.

The Clerk of Court is directed to deliver a copy of this Memorandum Opinion to all counsel of record.

Entered this 30th day of December, 2022.

---

[7] To support their argument, Defendants cite the expert witness report, dated May 17, 2022, by County Director of Planning and Zoning Samuel McLearen. *See* Dkt. 41 at 26. He stated that Plaintiff's "proposed change from a lattice-style to monopole tower constituted a substantive difference in its Application materials." Dkt. 41-12 at 12. However, the report was completed after Plaintiff brought this case on November 4, 2021. Thus, it fails to support that Defendants found Plaintiff's design change substantial when reviewing its application.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE